UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #: _____           │
│ DATE FILED: _3/31/2022_____          │
└─────────────────────────────────────┘
```

BLONDINE PAUL,

                     Plaintiff,

     -against-

MICHAEL CAPRA, Superintendent of Sing Sing
Correctional Facility; Lieutenant WILLIAMS, of
Sing Sing Correctional Facility; Investigator
"ISAAC", from the Office of Special Investigations,
of the NYSDOCCS; "JOHN DOE" and "JANE
DOE",

                     Defendants.

20-cv-5154(NSR)

ORDER & OPINION

NELSON S. ROMÁN, United States District Judge:

       Plaintiff Blondine Paul ("Plaintiff") commenced this *pro se* action on July 2, 2020, against

Michael Capra (Superintendent of Sing Sing Correctional Facility), Lieutenant Richard Williams

(New York State Department of Corrections and Community Supervision ("DOCCS")),

Investigator LeBaron Isaac (Office of Special Investigations ("OSI")), John Doe, and Jane Doe.

(ECF No. 2.) Plaintiff filed an Amended Complaint ("Am. Compl.", ECF No. 21) on March 25,

2021 which also names as a defendant DOCCS Acting Commissioner Anthony J. Annucci

(collectively, "Defendants"). Presently before the Court is Defendants' motion to dismiss the

Amended Complaint. (ECF No. 22.) For the following reasons, the Defendants' motion is

GRANTED.

## BACKGROUND

       The following facts are taken from the Complaint and the Amended Complaint, and are

construed as true for the purposes of this motion.

### I.    Factual Allegations

1

On June 20, 2017, Plaintiff arrived at Sing Sing Correctional Facility ("Sing Sing") for the purpose of visiting her incarcerated brother, Hotson Neree ("Neree"). (Am. Compl. at 9.) Plaintiff alleges that upon her arrival at Sing Sing, she was confined and searched by Investigator Isaac and a Jane Doe corrections officer, and accused by Investigator Isaac of entering Sing Sing for the purpose of smuggling contraband narcotics. (*Id*.) Plaintiff denies being in possession of any drugs or contraband, and denies ever "plan[ing] on entering" the facility to smuggle drugs or other contraband. (Compl. at 3.) Plaintiff states that she was permitted to leave the facility, however she was denied the right to visit her brother at Sing Sing. (Am. Compl. at 10.)

Plaintiff alleges that approximately three weeks later, she received a letter from Superintendent Michael Capra (the "Letter"). (Am. Compl. at 10.)[1] The Letter states that her visiting privileges at all New York State Department of Corrections and Community Supervision facilities were indefinitely suspended. (Capra Decl. Ex. A.) The Letter further states that her privileges were suspended because on her June 20, 2017 visit, she was interviewed by OSI and the New York State Police were called, and she was "uncooperative and fled the facility." (*Id*.) Therefore, it was determined that she conspired with Neree to smuggle contraband drugs into the facility. (*Id*.) The Letter also notifies Plaintiff that she has 60 days to appeal the decision. (*Id*.)

The Letter attaches a memorandum drafted by Investigator Isaac on June 20, 2017. (*Id*.) The memorandum states that an NYSDCCS OSI investigation was conducted and determined that Neree conspired with Plaintiff to mail into Sing Sing several narcotics. (*Id*.) On April 27, 2017 Neree received a package that contained narcotics. (*Id*.) In addition, there were multiple instances

---

[1] In deciding a motion to dismiss under Rule 12(b)(6), a court "may review only a narrow universe of materials" without converting the motion into one for summary judgment. *Goel v. Bunge, Ltd*., 820 F.3d 554, 559 (2d Cir. 2016). This generally includes "documents attached to it or incorporated in [the complaint] by reference" and "documents 'integral' to the complaint and relied upon in it." *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014). Therefore, the Court may consider the Letter sent to Plaintiff from Superintendent Capra (Declaration of Michael Capra ("Capra Decl.") ECF No. 24 Ex. A) as it is incorporated by reference in Plaintiff's Amended Complaint. (Am. Compl. at 10.)

where Neree spoke to Plaintiff on the phone to discuss how the narcotics were to be packaged and when they would be mailed. (*Id*.) On June 20, 2017, when Plaintiff arrived at Sing Sing, she was interviewed by OSI and "voluntarily left the facility grounds." (*Id*.)

Plaintiff states that she appealed the suspension of her visitation rights to Defendant Annucci, who, along with John Doe, upheld Capra's decision. (Am. Compl. at 10.). Plaintiff further alleges that Lieutenant Richard Williams has since reviewed Superintendent Capra's decision and has "unjustifiably failed to reinstate" her right to visit her brother. (*Id.*)

## II.        Procedural History

Plaintiff's Complaint is signed and dated June 15, 2020. (Compl. at 4.) A return of service form is attached, which contains the declaration of the server, listed as Neree, attesting that Neree mailed the Complaint on June 17, 2020. (*Id.* at 6.)

On October 16, 2020, Defendants informed the Court that they were unable to identify John or Jane Doe and that Investigator Isaac had not yet been served. (ECF No. 9.) On October 28, 2020 the Court ordered Plaintiff to provide Defendants with additional details as well as a description of John and Jane Doe within twenty-five days. (ECF No. 12.) Plaintiff failed to provide such information. Subsequently, Defendants requested a pre-motion conference to discuss their anticipated motion to dismiss on November 24, 2020. (ECF No. 15.)

On January 22, 2021, Plaintiff requested an extension of time to file an amended complaint that would "name [] John Doe and Jane Doe", identify the proper time and date of the incidents, and provide arguments as to why the Court should not dismiss the pleading. (ECF No. 16 at 1.) Plaintiff's letter also stated that she had not yet been able to file an amended complaint because the COVID-19 pandemic had prevented her from accessing "local general and law libraries." (*Id.* at 2.) Plaintiff's letter was enclosed in an envelope with Neree's return address at Great Meadow

Correctional Facility, and contains a postage stamp indicating that it was placed into the mail on January 19, 2021. (*Id.* at 3.) The Court granted Plaintiff's request and directed that any amended complaint be filed no later than February 26, 2021. (ECF No. 17.)

By letter dated February 22, 2021 and received by the Court on March 4, 2021, Plaintiff requested a second extension of time to file an amended complaint. (ECF No. 19.) Plaintiff stated therein that she was awaiting responses to FOIL requests from Defendants that would "assist [her] in the identification of the Jane Doe and John Doe" defendants. (*Id.* at 1-2.) Plaintiff also stated that an extension was needed due to the COVID-19 pandemic and recent snow storms, which affected her ability to "access the Law." (*Id.* at 2.) Plaintiff's letter was enclosed in an envelope with Neree's return address, this time, at Southport Correctional Facility. (*Id.* at 3.) The postage stamp on the envelope indicates that it was placed into the mail on February 25, 2021. The Court granted the request and directed that any amended complaint be filed no later than March 22, 2021. (ECF No. 20.)

The Amended Complaint was received by the Court on March 25, 2021. (ECF No. 21.) It is signed and dated March 16, 2021. (Am. Compl. at 12.) It does not contain a return of service or declaration of service. Plaintiff mailed the Amended Complaint in an envelope which contains the return address of inmate Moises Almanzer, DIN 18-A-4547, from Southport Correctional Facility, and a postage stamp that indicates it was placed into the mail on March 19, 2021. (*Id.* at 13.) The Amended Complaint identifies John Doe as "a counsel member for the NYSDOCCS' Office of Counsel" and Jane Doe as "a corrections staff whom is employed at [] Sing Sing." (*Id.* at 6.)

Defendants filed their motion to dismiss on July 6, 2021. (ECF No. 22.) Plaintiff failed to file an opposition. (ECF No. 27.)

**<u>LEGAL STANDARD</u>**

4

I.      **Motion to Dismiss pursuant to FRCP Rule 12(b)(5)**

Under Federal Rule of Civil Procedure 12(b)(5), a complaint may be dismissed for insufficient service of process. When considering a Rule 12(b)(5) motion, a court must look to matters outside of the complaint to determine whether it has jurisdiction. *Darden v. DaimlerChrysler N. Am. Holding Corp.*, 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002). Under Federal Rule of Civil Procedure 4, a plaintiff is required to serve a summons and complaint within 90 days after the complaint is filed, and failure to do so requires the court to "dismiss the action without prejudice against that defendant or order that service be made within a specified time." A court cannot properly exercise jurisdiction over a defendant in absence of "service of [the] summons" and complaint. *Dynegy Midstream Servs. v. Trammochem*, 451 F.3d 89, 94 (2d Cir. 2006) (internal quotation marks omitted). Plaintiff bears the burden of establishing that service was sufficient. *Khan v. Khan*, 360 Fed. App'x. 202, 203 (2d Cir. 2010) (citing *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298 (2d Cir. 2005)) (internal citation omitted).

II.     **Motion to Dismiss pursuant to FRCP Rule 12(b)(6)**

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), the complaint must include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is considered to be plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). It is not necessary for the complaint to assert "detailed factual allegations," but must allege "more than labels and conclusions." *Twombly*, 550 U.S at 555. Although legal conclusions may provide the

"framework of the complaint," "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678–79.

In the case that a Plaintiff "fails to oppose a motion to dismiss a complaint for failure to state a claim, automatic dismissal is not merited." *Banks v. Royce*, No. 18-cv-4738 (NSR), 2020 WL 5038590, at *2 (S.D.N.Y. Aug. 26, 2020). Therefore, "the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law." *McCall v. Pataki*, 232 F.3d 321, 322–323 (2d Cir. 2000).

*Pro se* complaints must be construed more liberally than non-*pro se* complaints. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("even after *Twombly*, though, we remain obligated to construe a pro se complaint liberally"). *Pro se* complaints must be interpreted as raising the strongest claims they suggest, but "must still state a plausible claim for relief." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013). When compared to complaints written by lawyers, *pro se* complaints must be held to less stringent standards, and only dismissed when the plaintiff can prove "no set of facts in support of his claim which would entitle him to relief." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Conley v. Gibson*, 335 U.S. 41, 45–46 (1957)). This "is particularly so when the *pro se* plaintiff alleges that her civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). "However, even *pro se* plaintiffs asserting civil rights claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a right to relief above the speculative level." *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (quoting *Twombly*, 550 U.S. at 555) (internal quotations omitted). The duty of the court "to liberally construe a plaintiff's complaint [therefore, is not] the equivalent of a duty to re-write it." *Geldzahler v. New York Medical College*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal citations and alterations omitted).

## DISCUSSION

Pursuant to Section 1983, Plaintiff alleges that Defendants' actions violated (1) her constitutional right to freely associate, (2) her Fourth Amendment rights to be free from illegal searches and seizures and (3) unlawful confinement, and (4) her due process rights to be free from patently false allegations and related determinations that are not supported by substantial evidence. (Am. Compl. at 11). The Court will address each below.

### I.   Improper Service

As an initial matter, Defendants aver that both Acting Commissioner Annucci and Investigator LeBaron Isaac have not been properly served. (Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint ("Defs.' MOL") ECF No. 23 at 5.) The Process Receipt and Return for Isaac reflects that service was unexecuted, (ECF No. 18), and Annucci, who was added to this action in the Amended Complaint, was never served. Therefore, all claims against Isaac and Annucci are dismissed without prejudice pursuant to Federal Rule of Civil Procedure 4(m).

However, Rule 4(m) provides that:

> [i]f a defendant is not served within 90 days after the complaint is filed, the court — on a motion or on its own after notice to the plaintiff — must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). The Court holds that it will exercise its discretion to grant Plaintiff an extension of time to effectuate service. *See e.g.*, *Zapata v. City of New York*, 502 F.3d 192, 195–96 (2d Cir. 2007) (holding an extension proper "even in the absence of good cause"). The Second Circuit has consistently held that Rule 4 should be construed liberally and that "incomplete or improper service will lead the court to dismiss the action *unless it appears that proper service may*

*still be obtained.*" *Romandette v. Weetabix Co.*, 807 F.2d 309, 311 (2d Cir. 1986). As Plaintiff is *pro se*, the Court will grant her an extension.

## II.   <u>Section 1983</u>

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see also Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). To state a claim under Section 1983, a plaintiff must allege (1) "the challenged conduct was attributable to a person who was acting under color of state law," and (2) "the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York*, No. 09 Civ. 5446(SHS), 2013 WL 1803896, at *2 (S.D.N.Y. Apr. 25, 2013); *see also Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010).

First, Defendants argue that Plaintiff's Complaint is untimely as it was not filed within the relevant statute of limitations. (Defs'. MOL at 7.) There is no federal statute of limitations for claims brought under Section 1983, therefore courts apply the statute of limitations for personal injury actions under state law. *McLaughlin v. Chong*, No. 13-cv-0807 (NSR), 2016 WL 1276470, at *3 (S.D.N.Y. Mar. 29, 2016). Under New York Law, personal injury actions have a three-year statute of limitations. *See* N.Y. C.P.L.R. § 214(5). Thus, Section 1983 actions filed in New York are subject to a three-year statute of limitations. *See Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir.

1997) ("New York's three-year statute of limitations for unspecified personal injury actions, New York Civil Practice Law and Rules § 214(5), governs section 1983 actions in New York").

Although state law determines the statute of limitations for Section 1983 actions, federal law determines when a claim accrues and the statute begins to run. *Veal v. Geraci*, 23 F.3d 722, 724 (2d Cir. 1994). A Section 1983 claim accrues when "the plaintiff knows or has reason to know of the injury which is the basis of his action." *Singleton v. City of New York*, 632 F.2d 187, 191 (2d Cir. 1980) (quoting *Bireline v. Seagondollar*, 567 F.2d 260, 263 (4th Cir. 1977)). However, "the reference to 'knowledge of the injury' does not suggest that the statute does not begin to run until the claimant has received judicial verification that the defendants' acts were wrongful." *Veal*, 23 F.3d at 724. Rather, a Section 1983 claim accrues when "the alleged conduct has caused the claimant harm and the claimant knows or has reason to know of the allegedly impermissible conduct and the resulting harm." *Id.;* (citing *Barrett v. United States*, 689 F.2d 324, 333 (2d Cir. 1982)), *cert. denied*, 462 U.S. 1131 (1983); *see also Wallace v. Kato*, 549 U.S. 384, 388 (2007) ("[accrual occurs] when the plaintiff has 'a complete and present cause of action', . . . that is, when 'the plaintiff can file suit and obtain relief'") (internal citations omitted). Similarly, Section 1983 actions against unnamed defendants, typically referred to as "John Doe" pleadings, have a three-year statute of limitations. *See Ceara v. Deacon*, 68 F.Supp.3d 402, 409 (S.D.N.Y. 2014) ("Federal and New York courts have held that where there is no indication in the record that a plaintiff has exercised due diligence prior to the expiration of the statute of limitations, a plaintiff is not entitled to make use of the 'John Doe' procedure provided in CPLR § 1024.").

The statute of limitations is "an affirmative defense as to which Defendants carry the burden of showing that Plaintiffs failed to plead timely claims." *Doubleline Cap. LP v. Odebrecht Fin., Ltd.*, 323 F. Supp. 3d 393, 435 (S.D.N.Y. 2018) (citing *Staehr v. Hartford Fin. Servs. Grp.*,

547 F.3d 406, 425 (2d Cir. 2008)). Therefore,  "[a] district court may only consider timeliness on a motion to dismiss when the circumstances are 'sufficiently clear on the face of the complaint and related documents as to make the time-bar ruling appropriate . . . .'" *Arco Capital Corps. Ltd. v. Deutsche Bank AG*, 949 F. Supp. 2d 532, 543 (S.D.N.Y. 2013) (quoting *LC Capital Partners, LP v. Frontier Ins. Grp., Inc.*, 318 F.3d 148, 157 (2d Cir. 2003)); *see also Ghartey v. St. John's Queens Hosp.,* 869 F.2d 160, 162 (2d Cir. 1989) ("Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss."). Where, as here, the defendant alleges that the plaintiff's claims are untimely, dismissal is improper unless it "appears beyond doubt" that the plaintiff's claim is barred by the applicable statute of limitations. *Egelston v. State Univ. Coll.*, 535 F.2d 752, 754 (2d Cir. 1976).

Here, Defendants argue that Plaintiff's causes of action began to accrue on the day she was allegedly held and searched at Sing Sing, June 20, 2017, and therefore Plaintiff's Complaint, filed on July 2, 2020, must be dismissed as untimely. Plaintiff responds that her claims did not begin to accrue until she received the Letter, "approximately three weeks" after the incident occurred, on or around July 11, 2017. (Am. Compl. at 11-12; Capra Decl. at Ex. A.)

Plaintiff's Amended Complaint can be read liberally to infer that until she received the Letter, Plaintiff did not know of the resulting harm that would be the basis of her causes of action for alleged violations of her rights to "freely associate with others" and "be free from patently false allegations and related determinations." (Am. Compl. at 11.) Plaintiff's allegations show that she was not aware of the full extent of the allegations against her or the Superintendent's decision until she received the Letter. The Court therefore finds it improper to dismiss these two causes of action

as time-barred as it is not clear from the face of the Amended Complaint that the statute of limitations has expired.[2]

However, the Court holds that it is clear from the face of the Complaint that Plaintiff's Section 1983 claims for alleged violation of her "right to be free from illegal searches and seizures" and "unlawful confinement" are untimely. Plaintiff had knowledge of the conduct and resulting harm on the day she was allegedly confined and searched, June 20, 2017. *See D'Angelo v. Kirschner,* 288 F. App'x 724, 726 (2d Cir. 2008) ("[A] cause of action for unlawful search and seizure generally accrues from the date of the unlawful search."); *Daniels v. City of New York*, No. 18-CV-3717 (RA), 2019 WL 1437586, at *2 (S.D.N.Y. Mar. 31, 2019) ("For claims of illegal search and excessive use of force, the date of accrual is the date on which the unlawful search or excessive force took place."). Therefore, Plaintiff was required to file suit for these alleged violations on or before June 20, 2020, which she failed to do. While the Complaint is signed by Plaintiff on June 15, 2020, as Plaintiff herself is not incarcerated, she cannot utilize the "prison mailbox rule" and therefore only the date the Complaint was filed is relevant for statute of limitations purposes. *See Best v. Newton,* No. 15 Civ. 4316 (ER), 2016 WL 5416505, at *5 n.9 (S.D.N.Y. Sept. 28, 2016) (holding the plaintiff's complaint was untimely where he signed it and gave it to a notary public but it was not filed until after the statute of limitations ran).

The Court nonetheless finds the Complaint to have been filed within the statute of limitations pursuant to New York Executive Order 202.8. "On March 20, 2020, Governor Cuomo issued Executive Order 202.8 declaring a state of emergency due to the COVID-19 pandemic and accordingly, among other things, tolling the time limits for filing legal actions as prescribed by the

---

[2] Defendants also state the Amended Complaint should be "stricken" as it was filed a few days after the Court's deadline. However, "courts [in the Second Circuit] generally have accorded *pro se* litigants latitude with respect to meeting procedural requirements." *Varrone v. Bilott*, 851 F. Supp. 54, 57 (E.D.N.Y. 1993). Therefore, the Court will afford Plaintiff leniency and will not strike the Amended Complaint.

state's procedural laws." *Bonilla v. City of New York*, No. 20-cv-1704 (RJD) (LB), 2020 WL 6637214 at *1 (E.D.N.Y. Nov. 12, 2020). Specifically, Executive Order 202.8 tolls "any specific time limit for the commencement, filing, or service of any legal action . . . as prescribed by the procedural laws of the state." *Id*. at *3. As the Second Circuit has concluded that "the Supreme Court wanted section 1983 actions to be subject to state 'tolling rules,' [and therefore] it seems likely that both statutory and common law rules are to be borrowed", *Pearl v. City of Long Beach*, 296 F.3d 76, 81 (2d Cir. 2002), the Court holds that Executive Order 202.8 tolled Plaintiff's Complaint. *See Bowers v. City of Salamanca,* No. 20-CV-1206-LJV, 2021 WL 2917672, at *6 (W.D.N.Y. July 12, 2021) ("The Court finds the latter cases more persuasive and follows *Bonilla* in concluding that Executive Order 202.8 applies in section 1983 cases."); *Bonilla*, 2020 WL 6637214 at *3 (finding the toll pursuant to Executive Order 202.8 should be borrowed in the context of Section 1983 which does not provide a federal statute of limitations); *Citi Connect, LLC v. Local Union No. 3, IBEW*, No. 20-cv-5147 (CM), 2020 WL 5940143 at *3–4, (S.D.N.Y. Oct. 7, 2020) (finding the toll pursuant to Executive Order 202.8 should be borrowed in the context of the False Claims Act which does not provide a federal statute of limitations). The Court therefore rejects Defendants' argument that the Complaint is barred as untimely.

Accordingly, the Court finds that the toll pursuant to Executive Order 202.8 should be borrowed in the context of Plaintiff's Section 1983 claims. Therefore, since the three-year statute of limitations for these claims was tolled from the date of the Executive Order, March 20, 2020, through November 3, 2020, Plaintiff's filing of the Complaint on July 2, 2020 is deemed within the statute of limitations and nonetheless timely.

### a.  First Amendment Claim

Plaintiff's Amended Complaint may be liberally read to assert a claim regarding the freedom of intimate association under the First Amendment with her brother, Neree.

The First Amendment protects the freedom of intimate association, which includes "choices to enter into and maintain certain intimate human relationships" including "those that attend the creation and sustenance of a family." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617–19 (1984) (the Constitution protects "certain kinds of highly personal relationships . . . from unjustified interference by the State"). However, the right to intimate association under the First Amendment "is among the rights least compatible with incarceration." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003). "The very object of imprisonment is confinement . . . [and as a result,] [m]any of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner." *Id.; see also Sealey v. Olszewksi*, No. 14-CV-3S, 2015 WL 9484521, at *4 (W.D.N.Y. Dec. 29, 2015) ("In the prison-visitation context, the visitor's rights are necessarily tied to the inmate's [rights]" (internal citations omitted)). Therefore, "[s]ome curtailment of [the right to intimate association] must be expected in the prison context." *Overton*, 539 U.S. at 131.

In the circumstance that a prison procedure curtails a prisoner or visitor's freedom to associate, the constitutional right is not violated if the procedure "bear[s] a rational relation to legitimate penological interests." *Id.* at 132; *see also Patterson v. City of New York*, No. 11-CV-7976(DLC), 2012 WL 3264354, at *7 (S.D.N.Y. Aug. 9, 2012) ("[L]imitations on visits that are reasonably related to a legitimate penological interest do not violate a prisoner's constitutional right."). The court must consider "whether the regulation has a 'valid, rational connection' to a legitimate governmental interest; whether alternative means are open to inmates to exercise the asserted right; what impact an accommodation of the right would have on guards and inmates and prison resources; and whether there are 'ready alternatives' to the regulation." *Overton*, 539 U.S.

at 132 (quoting *Turner v. Safley*, 482 U.S. 78, 89–91 (1987)). Further, the Court "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Id*.

Here, Plaintiff alleges her right to freely associate with her brother, Neree, was violated by Defendants when her visitation rights were indefinitely suspended, and when this decision was upheld after Plaintiff appealed the suspension to the Commissioner's office. (Am. Compl. at 10.) The Letter states that the suspension was in relation to an OSI investigation that revealed Plaintiff's participation in attempts to smuggle narcotics into the facility and therefore Defendants argue that there is a legitimate penological interest in indefinitely suspending Plaintiff's visitation rights. (Defs.' MOL at 11.)

The Court agrees with Defendants. The Court finds the suspension to be rationally related to the legitimate penological interest of preventing the introduction of drugs or other contraband into Sing Sing. *See Caldwell v. Goord*, No. 09-cv-00945(Sr.), 2013 WL 1289410, at *5 (W.D.N.Y. Mar. 27, 2013) (finding inmate's wife's suspension of visitation privileges and denial for reinstatement due to a conspiracy to smuggle drugs into the correctional facility did not infringe on both inmate and his wife's right of association because the suspension furthered a legitimate penological interest); *Ford v. Fischer*, No. 9:09-CV-723 (DNH/ATB), 2011 WL 856416, at *12 (N.D.N.Y. Jan. 31, 2011 ("[T]he visiting privileges of [plaintiff's] fiancée were indefinitely suspended in April 2009 because of her alleged involvement in smuggling a note from another inmate to plaintiff" which was "clearly [a] legitimate penological interest[] that justified [the] suspension"), *report and recommendation adopted,* 2011 WL 846860 (N.D.N.Y. Mar. 9, 2011); *Hernandez v. McGinnis*, 272 F. Supp. 2d 223, 227–28 (W.D.N.Y. 2003) (holding the plaintiff's

14

suspension of visitation rights served the legitimate purposes of "deterring visit-related misconduct" and "promot[ing] internal security"). Plaintiff's allegations that the suspension was "unjustified" and "baseless" are conclusory.  (Am. Compl. at 10.)

Further, although Plaintiff's non-contact visitation rights were suspended, alternative means of communication appear to remain available for both Plaintiff and Neree. *See Hernandez*, 272 F. Supp. 2d at 228 (upholding suspension of visitation rights in part because plaintiff could still communicate with persons outside the prison by letter and telephone).  Therefore, the Court finds that Plaintiff has failed to plausibly allege a violation of Section 1983 under the First Amendment.

### b.  Fourth Amendment Claims

Plaintiff's Amended Complaint may also be read to assert claims for unreasonable search and seizure and false arrest or imprisonment under the Fourth Amendment.

#### i.  *False Arrest*

"[F]alse arrest is considered a kind of false imprisonment, and the claims are analyzed in identical fashion." *Mitchell v. Victoria Home*, 377 F. Supp. 2d 361, 371 (S.D.N.Y. 2005). To prevail on a false arrest claim, a plaintiff must establish: "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994). Probable cause is a complete defense to a false arrest claim. *Id.*; *see also Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause."). "Probable cause is established when the arresting officer has knowledge or reasonably trustworthy information

sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Singer*, 63 F.3d at 119 (internal quotation marks omitted).

Here, the Court finds that Plaintiff has failed to state a claim of false imprisonment under the Fourth Amendment as Plaintiff was not confined, but rather was permitted to leave the facility, and in fact did so. (Am. Compl. at 10.) Further, Plaintiff's allegation that she was "unlawfully confined" (Am. Compl. 9), is merely conclusory as Plaintiff has not put forth a sufficient set of facts to substantiate her claim. Accordingly, Plaintiff's claim for false arrest or imprisonment is dismissed.

### ii. *Unreasonable Seizure*

The Fourth Amendment to the United States Constitution protects citizens' "persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV. A person is considered seized if "a reasonable person would have believed that he [or she] was not free to leave." *I.N.S. v. Delgado*, 466 U.S. 210, 215 (1984). "[R]easonableness is . . . the ultimate standard under the Fourth Amendment . . . ." *Soldal v. Cook Cty., Ill.*, 506 U.S. 56, 71 (1992) (internal quotation marks omitted); *see also United States v. Singletary*, 798 F.3d 55, 59 (2d Cir. 2015) (stating that reasonableness is "generally determined by balancing the particular need to search or seize against the privacy interests invaded by such action").

The Court finds that Plaintiff has also failed to state a claim for unlawful search and seizure under the Fourth Amendment.  Courts in the Second Circuit have recognized "that the smuggling into prison of contraband is indeed a serious problem which threatens the security of both prisoners and prison employees, and that considerable deference must be paid to the judgment of prison officials in their administration of state penal institutions." *Armstrong v. New York State Comm'r of Correction*, 545 F. Supp 728, 731–32 (N.D.N.Y. 1982). The Court therefore finds that Plaintiff's

privacy interests were substantially outweighed by the need to search or seize for contraband when entering Sing Sing. *See United States v. Willoughby*, 860 F.2d 15, 21 (2d Cir. 1988) ("Contacts between inmates and noninmates may justify otherwise impermissible intrusions into the noninmates' privacy."); *United States v. DePonceau*, No. 05-CR-6124L, 2008 WL 222520, at *7 (W.D.N.Y. Jan. 24, 2008), *report and recommendation adopted*, 2008 WL 624110 (W.D.N.Y. Mar. 5, 2008) ("[I]nmates and non-inmate visitors to prisons have diminished expectations of privacy in the prison setting.").

Although plaintiff states that she was "unlawfully searched," she fails to proffer evidence as to the method used to search her as well as how long she was searched for. Without such facts, the Court cannot hold that Plaintiff's Fourth Amendment rights have been violated. *See Lesane v. City of New York*, Case No. 11-CV-2104(HB), 2011 WL 5242721, at *2–3 (S.D.N.Y. Nov. 3, 2011) (holding that plaintiff's Fourth Amendment allegations were insufficient as he failed to "allege facts sufficient to show that the searches were unreasonable, that they failed to serve a reasonable penological goal, or that they were intended to intimidate, harass, or punish him."). In any event, the Court notes that "less invasive searches or seizures are constitutionally permissible conditions on visitation even if not accompanied by any reasonable suspicion." *Amaker v. Annucci*, No. 14-CV-9692 (KMK), 2016 WL 5720798, at *8 (S.D.N.Y. Sept. 30, 2016), *aff'd*, 721 F. App'x 82 (2d Cir. 2018); *see also Spear v. Sowders*, 71 F.3d 626, 630 (6th Cir. 1995) ("[Prison] [v]isitors can be subjected to some searches, such as a pat-down or a metal detector sweep, merely as a condition of visitation, absent any suspicion."). Therefore, the Court finds that Plaintiff has failed to plausibly allege a violation of the Fourth Amendment.

**c.  Fourteenth Amendment Claims**

Plaintiff's Amended Complaint may also be liberally read to assert violation of her due process rights under the Fourteenth Amendment. (Am. Compl. at 11.)

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment" *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Therefore, to prevail on a procedural due process claim, a plaintiff must show that he or she was deprived of a protected property or liberty interest without notice and an opportunity to be heard. *Reyes v. Cnty. of Suffolk*, 995 F. Supp. 2d 215, 228 (E.D.N.Y. 2014). To establish a violation of substantive due process, a plaintiff must allege government action so egregious or outrageous that it can be said to "shock the contemporary conscience." *Pena v. DePrisco*, 432 F.3d 98, 112 (2d Cir. 2005). Further, where probable cause exists, "there can be no claim for denial of either the procedural or substantive right to due process." *Harris v. Cnty. Of Nassau*, 581 F.Supp. 2d 351, 357 (E.D.N.Y. 2008).

"[C]ourts in the Second Circuit have consistently held that neither the Due Process Clause nor New York state law create a protected liberty interest for inmates with respect to contact visits." *Hernandez v. Sposato*, No. 14-cv-4593 (JFB)(ARL), 2015 WL 4097784, at *4 (E.D.N.Y. July 8, 2015). The same can be said for inmates' family and friends. *see Malavé v. Weir*, No. 3:16-cv-00009 (JAM), 2018 WL 500644, at *7 (D. Conn. Jan. 22, 2018) ("The upshot is that the law of the Second Circuit does not recognize a clearly established right of married partners to engage in either in-person visitation or telephonic communication with one another while one of those persons is in prison."); *U.S. v. Madoff*, No. 09 Cr. 213 (DC), 2016 WL 11551475 at *2 (S.D.N.Y. Nov. 23, 2016) ("The denial of prison access to a particular visitor is well within the terms of confinement ordinarily contemplated by a prison sentence, . . .  and therefore is not

independently protected by the Due Process Clause.") (quoting *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)); *Gatson v. Selsky*, No. 94-CV-292(RSP/GJD), 1997 WL 159258, at *4 (N.D.N.Y. Apr. 4, 1997) (holding the plaintiff's wife did not have a liberty interest in family reunion or conjugal visits).

Here, to the extent that Plaintiff alleges a procedural due process claim, the Court finds that Plaintiff has failed to state a claim. In the Second Circuit, inmates and inmate visitors do not have a protected liberty interest to contact visits. *See Hernandez*, WL 4097784 at *4. Therefore, Plaintiff fails to put forth a protected liberty interest to assert a procedural due process claim. Further, Plaintiff was given notice of this alleged deprivation by the Letter informing her of the indefinite suspension of her visitation rights, and was also given an opportunity to be heard by utilizing her right to appeal the determination to the Commissioner's office. (*See* Capra Decl. at Ex. A); *see also Kozlowski v. Coughlin,* 539 F.Supp. 852, 857–58 (S.D.N.Y. 1982) (holding that plaintiff's procedural due process rights were violated when privileges to visit her inmate husband were revoked because plaintiff was not afforded the "opportunity to be heard" or to appeal the determination). The Letter identifies how Plaintiff may appeal the decision, which Plaintiff alleges she in fact did pursue. (*See* Capra Decl. at Ex. A; Am. Compl. at 10.)

Alternatively, to the extent that Plaintiff alleges a substantive due process claim, Plaintiff also fails to put forth allegations that the denial of her visitation on June 20, 2017 followed by Superintendent Capra's indefinite suspension consisted of "action[s] so egregious or outrageous that [they] can be said to [have] shock[ed] the [Plaintiff's] conscience." *Pena*, 432 F.3d at 112; *see also Hirsch v. City of New York*, 300 F. Supp. 3d 501, 512 (S.D.N.Y. 2018) ("In order to shock the conscience and trigger a violation of substantive due process, official conduct must be outrageous and egregious under the circumstances; it must be truly brutal and offensive to human dignity.")

(internal quotation marks and citations omitted). Plaintiff's allegations that the denial was an "unjustified determination" and "erroneous" are merely conclusory and therefore do not put forth sufficient facts to state a claim for relief. Therefore, Plaintiff's Section 1983 claims brought under the Fourteenth Amendment must be dismissed.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. Plaintiff is granted leave to file a Second Amended Complaint consistent with this Opinion and Order on or before May 31, 2022.  Failure to file a Second Amended Complaint within the time allowed, and without good cause to excuse such failure, will result in dismissal of Plaintiff's Complaint with prejudice. Plaintiff will also have until May 31, 2022 to serve Acting Commissioner Annucci and Investigator LeBaron Isaac if she wishes to proceed with her claims against them.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 22.  The Clerk of Court is further respectfully directed to mail a copy of this Opinion & Order to the *pro se* Plaintiff at the address listed on ECF, and to show proof of service on the docket.

Dated:  March 31, 2022                                                SO ORDERED:

         White Plains, New York

_____

NELSON S. ROMÁN

United States District Judge